# Bullock *against* Wilcox.

The *bona fide* holder, for value and without notice, of a negotiable note made to A. B. or bearer, is entitled to recover on it against the maker, free from all subsisting equities between the original parties.

ERROR to the common pleas of *Bradford* county.

This was an action by Isaac Bullock against James Wilcox, upon a promissory note in the following form.

"For value received I promise to pay to William Simpson or bearer the sum of twelve dollars by the 20th of June next. Witness my hand, July 27th, 1832.                     JAMES WILCOX."

When the note was given, William Simpson, Jun. executed a paper and delivered it to Wilcox, certifying what the note was given for, and that if the consideration should fail, the note should be void.

The present plaintiff was a *bona fide* holder of the note for value. The consideration having failed, the question was, whether he was entitled to recover. The court below decided that he was not. Which was the error assigned.

*Bulloch,* for plaintiff in error, cited, 5 *Watts* 482; 3 *Watts* 20; 2 *Watts* 134; 1 *Binn.* 433.

*Watkins,* for defendant in error, cited, *Roberts's Dig.* 375; 3 *Selw. N. P.* 987; 2 *Bl. Com.* 497; 1 *Dall.* 441; 1 *Serg. & Rawle* 182; 4 *Serg. & Rawle* 186; 8 *Serg. & Rawle* 483; 9 *Serg. & Rawle* 196; 12 *Serg. & Rawle* 265.

The opinion of the court was delivered by

KENNEDY, J.—The question presented here is, does the holder of a negotiable note for money, made payable to W. S. or bearer at a subsequent day, who has taken it of W. S. in the ordinary course of business, and given for it a valuable consideration, without notice of any objection which the maker may have to the payment of it when it shall become due, hold it subject to the equities which existed between W. S. and the drawer; and liable to all the objections which the latter had a right to set up against the payment of it to W. S. had he not parted with it? That such notes have grown out of the commerce of the country and the exigencies of it, must be admitted by all. They have been resorted to and used in commercial operations as a part of the circulating medium, without which the great objects of commerce could not well be accomplished or at-

[Bullock v. Wilcox.]

tained.　But in order to make such paper answer this great end, it would seem to be indispensably requisite, that the maker, after having given currency to it, should not be allowed to contest the payment of it at maturity, when in the hands of an innocent and *bona fide* holder, who has received it in the ordinary course of his business, and given for it a valuable consideration ; because, when such paper is taken by the holder from the payee without indorsement, it may be said to be taken exclusively on the credit of the maker, it being known to the receiver that he is perfectly responsible : but if it be held that the maker is at liberty to defend against the payment of the note in the hands of an innocent holder, the same as in that of the payee, it must inevitably detract from the credit that otherwise would be given to it, and therefore of necessity limit the extent of its circulation ; in short, check the currency of it, so as to defeat, measurably, the very end for which it was designed by the parties, if we are permitted to judge of this from its tenor ; which ought to govern and be regarded as the law of the contract ; and more especially so when, instead of being inconsistent with the principles of sound policy and the great commercial interests of the country, the prosperity of which is in a less or greater degree calculated to advance that of every other branch of business in it, it seems to be proper and necessary to promote all these, as well as to carry into effect the intention of the parties as expressed on the face of the instrument itself.　And even where the payee passes the note away by indorsing it, this can furnish no reason for the application of a different rule, because the indorsement is only made for the purpose of increasing the security and giving the greater credit to the note.

In support, however, of the judgment of the court below, determining that the plaintiff took the note here subject to all equitable considerations existing between the drawer and the payee, the case of M'Cullough *v.* Huston, 1 *Dall.* 441, has been cited ; as also the act of 1797.　The court, in M'Cullough *v.* Huston, profess to be governed entirely, in their decision of the case, by the provisions of the act of 1715, making bonds and notes given for the payment of money, and made payable to assignees or *order*, assignable ; and enabling the assignees and indorsers thereof to maintain suits in their names in the same manner as the obligees or payees might have done.　The case of M'Cullough *v.* Huston, it was said by the late Chief Justice Tilghman, 12 *Serg. & Rawle* 265, though never overruled, has always been regretted.　Anterior to that, I believe, it had not been overruled, but its correctness had been questioned by high judicial authority ; and perhaps spoken of as having no binding efficacy.　See Mr Wharton's note to it, in his edition of 1 *Dall.* 411, and the cases and *dicta* therein referred to by him.　The legislature of this province in 1715 may, and most likely did not consider promissory notes, though drawn in negotiable form, for the payment of money, as appertaining to the commercial business of the country, and forming as it were a part of the circulating medium of it, with

[Bullock v. Wilcox.]

at least that portion of the community engaged in the business of commerce.    But in this, I apprehend, they were mistaken ; and that their enactment, in regard to negotiable notes, may be considered, so far as they went, merely declaratory of the common or commercial law of the country, and not as creating any new or restricting the old rule on the subject.    And in this light, it appears to me, was the act of 1797 viewed by this court in Lewis *v.* Reeder, 9 *Serg. & Rawle* 193, where they hold that the consideration of a note payable " without defalcation" cannot be inquired into in an action by a *bona fide* holder against the maker, though the note was not dated in the city or county of Philadelphia, nor discounted by a bank, nor deposited in a bank for collection.    But I take it, that the principle of the case of M'Cullough *v.* Houston must be considered as overruled by the late case of Camp *v.* Walker, 5 *Watts* 482.    The note there, it is true, was payable to "bearer" as in this case ; and not to " order," which is the word used in the act of 1715, as also that of 1797.    But I am not disposed to regard this mere *verbal* difference as sufficient to warrant the application of a different rule to the case of a note drawn in the one form, from that of a note in the other.    In Camp *v.* Walker, the action was instituted by and in the name of a *bona fide* holder of the note, who had received it in the ordinary course of business from the payee ; and this court decided, that the justice of the peace before whom the suit was originally commenced had jurisdiction ; and held it to be so expressly, because the holder of a negotiable note has nothing to do with the original consideration ; that he takes it discharged of all equities between the maker and payee.    It is true that the case of M'Cullough *v.* Huston was not brought to the view of the court in Camp *v.* Walker ; nor was the consideration of the note there sought to be inquired into for the purpose of setting the note aside or defeating the ultimate payment of it, but to show that the justice could not take cognizance of the claim, because the note was given to secure the payment of part of the purchase money of a lot of ground, and, being thus founded upon a *real* contract, was expressly excluded by the action from the jurisdiction of the justice.    The decision of the court however was right upon commercial principles independently of the acts of assembly, and must be considered as governing the present case, even to the very letter, if it were necessary.    Besides, it is in accordance with the law, as it is adopted and understood in most, if not in all our sister states; and, indeed, I believe I might add in almost every civilized commercial country.    And, certainly, it is of vast importance to the commercial world, that the laws, usages and customs in relation to commerce should be the same and as nearly uniform as circumstances will admit of, in every part and throughout the whole of it.

Judgment reversed and judgment for the plaintiff.