31 · 216
70   659
31   216
71   712

31   216
76   406
76   410

◆

## DUDLEY M. CRAIG *v.* THE CITY OF VICKSBURG.

1. BOND : PAYABLE TO BEARER : NEGOTIABLE BY : DELIVERY.—A promissory note, or bond, payable to bearer, is, by the terms of the instrument, payable to whomsoever may lawfully hold it, and is negotiable at common law—the legal title passing by mere delivery.

2. SAME : NEGOTIABILITY OF : HOW AFFECTED BY THE STATUTE OF THIS STATE.—The statute of this State, (Hutch. Code, 640, § 9,) which provides for the assignment of notes, bonds, &c., by indorsement in writing, was intended to make instruments for the payment of money, or other things, negotiable, which were not so at common law ; and it has no reference to such as were negotiable at the time it was enacted ; and hence, bonds and notes, payable to bearer, being by the common law transferable by delivery, are not required by this Act, in order to pass the legal title thereto, to be indorsed in writing.

3. SAME : WHEN SUBSEQUENT HOLDER AFFECTED BY PRIOR EQUITIES.—The 9th section of the Act of 1822, (Hutch. Code, 640,) which provides, " that in all actions upon any assigned bond, promissory note, or other instrument thereby made assignable, the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and set-offs, had or possessed against the same, previous to notice of the assignment, in the same manner as if the action had been prosecuted by the obligee or payee therein," does not refer to instruments which were before that time negotiable at common law ; it reserves the right to make such defence, as against the assignee of such instruments only as are by that statute made assignable.

4. BOND : PAYABLE TO BEARER : NOT SUBJECT TO EQUITIES AGAINST PRIOR HOLDER.— At common law, the *bona fide* holder by assignment for a valuable consideration, of a bond or note payable to bearer, is not affected by any equities existing between the maker or obligor and the person to whom he originally delivered it ; and the rule is the same in this State.

5. BOND : ASSIGNEE : RIGHT OF : PLEADING.—*Prima facie* the holder of a promissory note, or bond, payable to bearer, is presumed to be a holder *bona fide* and for value ; and it is incumbent on the maker or obligor, who seeks to resist the collection of the note, or bond, on account of defences existing between him and a prior holder, to show that the plaintiff became the holder under such cir-

Craig *v.* The City of Vicksburg.

cumstances as show that he had notice thereof, either in fact or in law, or that he did not acquire it for a valuable consideration; and his plea setting up such a defence will be bad, unless it aver that the plaintiff took the instrument with notice of his defence, or without paying therefor a valuable consideration.

APPEAL from the Circuit Court of Warren County. Hon. John I. Guion, judge.

The appellant sued the City of Vicksburg, in debt on a bond executed by the corporate authorities, in the following words and figures:—

"SCRIP OF THE CITY OF VICKSBURG.

"*Authorized by an Act of the Legislature of the State of Mississippi.*

"Three years after date, the City of Vicksburg promises to pay the bearer the sum of one thousand dollars, with interest thereon, at the rate of six per centum per annum, payable at the end of each six months, from the date hereof. Both principal and interest to be paid at the United States Bank in Philadelphia, in gold or silver coin, upon presentation of this scrip.

[ L. S. ] "In testimony whereof, Miles C. Folkes, the Mayor of the said City, hath hereunto set his hand, with the seal of the said City, this thirteenth day of June, A. D. one thousand eight hundred and forty.

Attest,              "MILES C. FOLKES, *Mayor.*

"SAMUEL B. HARWOOD, *City Clerk.*"

The declaration, after describing the bond, and alleging its execution by the appellee, averred "that the plaintiff is the lawful bearer of the said writing obligatory."

Among other pleas, the defendant pleaded the following:—

"6. And for a further plea in this behalf the said defendants say, that before the commencement of this action, on, to wit, the —— day of ——, at, to wit, the county aforesaid, the said defendants well and truly paid the said debt in the said declaration demanded, and all interest to the Commercial Bank of Millington,

to which said bond was delivered and made before they, the said defendants, received notice of any assignment or transfer to said plaintiff; and this they, the said defendants, are ready to verify," &c., &c.

With this plea was filed the following notice: "The plaintiff and his attorneys will take notice, that under the above plea, the defendant will produce, as off-sets, the notes and checks of the said Commercial Bank of Millington, held by defendants, as follows," &c.

7. And the said defendants for further plea, by leave of this court, say *actio non*, &c., because they say, the said supposed bond in the plaintiff's declaration mentioned, was fraudulently and without consideration obtained from the said defendants by the Commercial Bank of Millington, on, to wit, the —— day of —— at, to wit, the county aforesaid; and that said defendants have never received any consideration therefor; and this they are ready to verify wherefore, &c.

To both these pleas the plaintiff demurred "in short, by consent." The court below overruled the demurrer, and the plaintiff declining to reply, judgment final was entered for the defendants. From this judgment the plaintiff appealed.

*W. C.* and *A. K. Smedes* and *T. A. Marshall*, for appellant.

Various grounds were taken below in support of the pleas; and we will endeavor to notice and answer, we think satisfactorily, each of them.

1. It is said that a bond is not *negotiable* either at the common law or under the commercial law, and that therefore an assignee of such a bond cannot maintain an action in his own name, unless allowed by statute; and then only to the extent permitted; and that our statute, as does also, it is insisted, the statute of Pennsylvania, in allowing the negotiability of bonds, reserves the right of offset and defence as against the original parties thereto. There is plausibility, but a demonstrable fallacy in the application of this line of argument to the case before the court. The right of the holder of this bond, to sue on it in his own name, and to recover the amount of it, is not conferred by statute, in either

this State or Pennsylvania; but if it exist at all, exists *ex vi termini* of the *contract* of the parties itself. It is not a statutory right; it is a matter of express stipulation and *contract between the parties.*

Much learning has been wasted to prove an admitted proposition, that bonds payable to any one or order, were not negotiable or transferable, either by the common or commercial law, so as to vest a legal right of action in the assignee, or debar the maker from any defence as against the original party. No one denies so patent a proposition.

But the case before the court is one, not of a bond payable to A., or order; but of a bond *payable to bearer;* and we insist there is a clear distinction between the two cases. A distinction expressed concisely and perspicuously in *Grant* v. *Vaughan,* 3 Burr. 1527; wherein Mr. Justice Wilmot says, "*bearer*" is *descriptio personæ:* and a person may take by that description as well as by any other. In the nature of the contract, there is no impropriety in his doing so. It is a contract " *to pay the bearer, or to the person to whom he shall deliver it,*" (whether it be a bill of exchange or a promissory note [and may we not with equal propriety, on principle, add, *or a bond?*]) and it is *repugnant* to the contract, that the drawer should object " that the bearer has no right to demand payment from him." The italics are Judge Wilmot's.

This bond was undoubtedly issued by the city as a valid and *binding obligation.* It was issued for value; and is payable to bearer; and with equal propriety may it be said here, as was said in the case just cited, " If *this* bearer cannot bring an action on it, *no*-body can: for as it is *not* made payable to any particular person *by name,* no action can be brought *in* the name of such particular person." The italics here, are also those of the Judge.

The right of the plaintiff to maintain this suit on this bond as being the bearer thereof, and therefore the person to whom the city promised to pay it, will be more apparent from the consideration of the case of *a note payable* to bearer.

The Supreme Court of this State, in the case of *Tillman* v. *Ailles,* 5 S. & M. 373, says: "A note payable to bearer passes

by mere delivery, and the holder claims his title to the note by virtue of being its bearer, and of the *promise* and *contract* between the maker and bearer. The circumstance of making the note payable to any person or bearer, does not compel the holder to show an indorsement by that person, since it is payable in the alternative, and not to that person absolutely. In such case it is transferable by mere delivery." Ib. 378.

Substitute now the word *bond*, for note, and the reasoning of the court is equally apposite and conclusive.

But it is argued that notes payable to *bearer*, were in the condition of bonds payable to bearer, before the Statute of Anne, (3 & 4 Anne, c. 9, § 1,) made perpetual by 7th Anne, c. 25, 1709; and that notes were made negotiable by that statute, and bonds were not; and that our statute and the Pennsylvania Statute in making notes and bonds assignable, have not followed the statute of Anne and made them actually negotiable. Let us look at this.

That promissory notes payable to bearer are negotiable in *this* State, is no longer an open question, as we have already seen. Whence do they derive their negotiability? Not by the Statute of Anne, for that is not in force here. Not, as we think we shall presently show, by our own statute; but as the High Court has expressly decided "*by the promise and contract between the holder and bearer.*"

We say, notes payable to bearer in this State are not made negotiable by the Statute of Anne here, for that is not in force here; and we think a careful inspection of the Statute of Anne will show that they are not made negotiable by that statute even in England. But be that as it may, and its decision is not important to the case before the court, we say they are not made negotiable by our Statute. It is in these words, (Hutch. Code, 640, § 9;) "All bonds, obligations, bills single, promissory notes, and all other writings for the payment of money or any other thing, shall and may be assigned by indorsement, whether the same be made payable to the order or assigns of the obligee or payee or not; and the assignee or indorsee shall and may sue in his own name, and maintain any action which the obligee or payee might or could have sued, or maintained thereon previous to assignment;

Craig v. The City of Vicksburg.

and in all actions commenced or sued upon any such assigned bond, obligation, bill single, promissory note, or other writing as aforesaid, the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments and set-offs, made, had, or possessed, against the same, previous to notice of the assignment, any law, usage, or custom notwithstanding, in the same manner as if the same had been sued and prosecuted by the obligee or payee therein: and the person or persons to whom such instruments so payable are assigned, may maintain an action against the person or persons who shall have indorsed or assigned the same, as in cases of inland Bills of Exchange. *Provided,* that where any debt shall be lost by the negligence or default of the assignee or assignees, the assignor or assignors shall not be liable, any such assignment notwithstanding."

This is the whole of the act bearing on the question, and not a syllable is said in it with reference to *notes payable to bearer.* Rather, on the contrary, they are expressly excluded, by such language as "shall and may be assigned by indorsement," "the obligee and payee," "previous to assignment," "assigned bond, obligation, &c.," "as if the same had been sued and prosecuted by the obligee or payee therein;" and the concluding provision that the holder of "such instruments" may sue the person who has "indorsed or assigned the same." The section obviously refers to notes and instruments *not previously negotiable,* and was conferring negotiability on them. Notes and bonds payable to *bearer,* were not included, because by their very terms the *holder* could sue *the maker;* but could *not* sue the former holder when he had merely passed it by delivery. Not a syllable of the act applies to notes *payable to bearer.* Whence then, once more we ask, do they get their negotiability? and we are driven again to the answer the court has already furnished us, "*from the promise and contract between the holder and bearer.*"

This conclusion of our own court is fully sustained by Mr. Justice Story, in *Bullard* v. *Bell,* 1 Mason, C. C. R. 251, in which he says: "A note payable to bearer, is often said to be assignable by delivery; but in correct language *there is no assignment in the case.* It passes by mere delivery; and the holder never makes

any title by or through any assignment, but claims merely as bearer. *The note is an original promise by the maker to pay any person, who shall become the bearer.* It is therefore, payable to any and every person, who successively holds the note *bona fide,* not by virtue of any assignment of the promise, *but by an original and direct promise moving from the maker to bearer."* This, substituting "bond" for "note," applies directly to our case, and in principle there is not a shadow of difference. They both stand on the same basis, viz: *the contract of the parties.* Neither derives the least assistance from the Statute. What is there in the fact of *a seal* to the instrument, to preclude the maker from making the contract he has made here, to pay "anybody who may hold the bond, be he whom he may ;" for all that is summed up in the word "*bearer ?*" May not a man contract as widely and with as little limit under seal as he can by parol? Is there anything illegal in such a contract? Is there anything immoral in it? If not; if not against public morals or public law, why shall it not be enforced? The defendant certainly made the contract; put the bond in the market and invited bidders for it. The city may have done a foolish thing, or an improvident thing, in not making the bond payable to *order,* so that it might have reserved a right, in case its agents defrauded it, or the consideration of the bonds should otherwise fail, to set up the defence allowed by the statute. But it failed to do so. It either had too much confidence, or was anxious to give the bonds the most negotiable form it possibly could, so as to take them out of the range of the statute and make them payable at all events; and thus insure them a more ready and certain sale. In other words, make them more *marketable.* Whatever the object of the city, it is very plain that the city did execute the bond; did make it payable to bearer; did put *it* in the market, without a single ear-mark from which a purchaser might ascertain to whom it was originally issued; and that the bond did come into the hands of the plaintiff as the lawful bearer. In this state of the case the simple question is, shall the city be kept to her *contract?* Shall she do what she has agreed under her corporate seal to do, pay the bearer this money? or shall she be allowed to shield herself behind the fact that she issued this

Craig v. The City of Vicksburg.

bond originally to the Bank of Millington, and now has off-sets against it in the paper of that bank, without a suggestion or a hint that the plaintiff ever heard or knew a syllable of such dealings, or came by the bond in any other way than in the due and usual course of trade ?

*He who trusts most must lose most*, is a maxim of the law, of direct application here. The city saw fit to run the hazard in putting her naked bond into market. She did it as matter of venture. She had an object in view. She trusted the Bank of Millington with the bonds, and if defrauded by that bank she must bear the loss.

2. As the right of the plaintiff to sue on this bond is so earnestly contested, and what seems to us a plain proposition, to wit: that a party may make any sort of a contract, provided it be neither against law nor morals, is in effect, so emphatically denied, we propose briefly to review the authorities and reasonings relied on, on the other side, to preclude plaintiff's recovery. The authority mainly relied on is *Clarke* v. *Benton Co.*, 15 Wend. 257. It has no direct bearing on this case; but in so far as it does bear on it, it is *in our favor*. That was a bond payable to *order ;* and the court says it was negotiable neither by the common law, nor the statute of New York; and in that we agree; but in the comment of the court upon the case of *Gorgier* v. *Mieville*, to which we shall presently advert more fully, the court say, that a recovery was allowed in that case because "by the instrument in that case, the King of Prussia acknowledged that the sum mentioned in it *was due to any person for the time being the holder ;* and the court likened it to a bank-note." Ib. 259; *Gorgier* v. *Mieville*, 10 Eng. Com. Law Rep. 16. The case of *Clarke* v. *Benton Co.*, has not the slightest likeness to the case at bar, and does not at all conflict with, but as is seen, rather recognizes our views.

*Whitaker* v. *Brown*, 8 Wend. 491, presents a mere question of evidence, and is clearly for us, in so far as it is an authority at all on the question; as it decides the declarations by the payee of a note payable to a bearer, not to be evidence in a suit by the assignee, and thus recognizes the holder's right as bearer.

*Kirby* v. *Sisson*, 2 Wend. 550, decides merely that no action at

law can be maintained on a lost note payable to bearer; and in so far as it touches the question, is in our behalf; because it goes undoubtedly upon the ground, that the maker would be liable to any subsequent *bona fide* holder.

*Olmstead* v. *Stewart*, 13 Johns. R. 239, is not the case of a note payable to bearer, but merely allows an offset against the holder of a note payable to order, and is in no wise in point.

*Pierce* v. *Craft*, 12 Johns. R. 90, is directly in point on our side. It was an action of *indebitatus assumpsit*, sustained by evidence of a note payable to "William Douglass or bearer;" and Crafts was the plaintiff in the action. The court, in deciding the case, said: "Bearer in *descriptio personæ* of the real payee. It may be that William Douglass had no knowledge of the note, or is a fictitious person. The note, however, is transferable by delivery merely, and possession was evidence of property in the plaintiff below, *prima facie.*" The court adds, in answer to an objection of a want of privity between the parties: "There is a privity of contract between the maker of a negotiable note and the assignee or bearer, as in this case. *It is a contract to pay the money to whoever may become entitled to it by transfer, as bearer;* and such privity commences as soon as the bearer becomes so entitled." Ib. 94.

This fully sustains the view for which we contend, and gives to the word "bearer," all the "magic" to which we consider it entitled.

*Fearn* v. *Everston*, 20 Johns. R. 142, was a case on *an open account*, and presented a mere question of evidence, having no relation, that we can see, to the case at bar.

*Brush* v. *Reeves*, 3 Johns. R. 439, merely decides that the indorser of a note payable to him or bearer, may be sued as such indorser; a decision affirming the principle we here contend for, viz: that men will be held *to their contracts*, and must make them good. That there could be a question raised about the liability of an indorser in such a case, shows the peculiar footing on which notes payable to bearer stand.

*Murray* v. *Judah*, 6 Cow. 490, bears no relation to this case. It presented a mere question of evidence, and of liability as between

principal and surety, and has not, so far as we can see, even a remote application.

*Williams* v. *Mathews,* 3 Cow. 252, was the case of an indorsed note, not payable to bearer, and presented a mere question of evidence again, in no way touching the points here involved.

*Smith* v *Pettus,* 1 Stew. & Port. 107, is the case of an equitable defence by the maker of a note against the assignee, on failure of consideration, and has no relation to the case now in issue.

And so it will be found with all the other numerous decisions cited by the counsel. With the exception of one, which we admit is expressly in point and against us—*Sayre* v. *Lucas,* 2 Stew. (Ala.) 259—all of the cases cited, such as those from Pennsylvania, Indiana, &c., relate to bonds payable to *order,* the non-negotiability of which we admit, or present questions the applicability of which we are not able to see. The case of *Bradford* v. *Williams,* 4 How. (S. C.) R. 577, cited and confidently relied on, forms no exception to the others.

The case of *Glyn* v. *Baker,* 13 East, 512, so much relied on, was the case of a bond payable to *order;* and the opinion of Le Blanc, J., was put on the ground that "no action could be brought upon the bond in question but by Sibley, the obligee, *in his own name;* or, if he died, in the name of his executors." It was the case of a fraudulent transfer by an agent, of one set of bonds belonging to one customer, to certain persons on his own account, and a substitution by him of other bonds, belonging to a different customer. The bonds were *generally* alike, but *distinguishable by different dates, numbers, and other ear-marks.* The court held, and properly, that the title to these last bonds had not passed; but it is obvious from the tenor of the whole decision, that they would have held otherwise had the two sets of bonds been *identical;* or had they both been payable to bearer.

3. We come now to the consideration of the case of *Sayre* v. *Lucas,* 2 Stew. (Ala.) 259, with which we will compare that of *Gorgier* v. *Mieville,* 3 Barn. & Cress. 45; 10 Eng. Com. Law Rep. 16; and will review the principles on which they both stand. *Sayre* v. *Lucas,* is a case which we remember to have read, but the book in which it is to be found is not in our library, nor at

VOL. II.—15

present within our reach.   Our general impression of it is, as of a case holding that a bond payable to A. or bearer, is not assignable by delivery, so as to vest a right of action in the holder other than A.   Whether the court would have so held in a case where the bond was payable to *bearer* alone, as here, does not, according to our recollection, appear.   But we put it down as a case against us, and propose to investigate its weight as an authority.   We have already seen that *in this State*, and at common law, a *note* payable to bearer is negotiable *ex vi termini*, from the very fact of its being payable to *bearer*, and the contract thus arising between *holder* and *maker;* and we have already contended that in principle *a bond* payable to bearer, stands in the same attitude.

In 1 Smith's Leading Cases, (Am. ed. 518,) 259, marg., in the comments on *Miller* v. *Race*, 1 Burr. 452, holding that a bank-note payable to *bearer*, passed by delivery, and a *bona fide* holder could hold it even as against the owner from whom it was stolen, the author lays down the tests of *negotiability* as follow: "Whenever an instrument is such that the *legal* right to the property secured thereby passes from one man to another by the delivery thereof, it is, properly speaking, a negotiable instrument, and the title to it will vest in any person taking it, *bona fide* and for value, whatever may be the defects of the person transferring it to him.   An instrument is called negotiable when the *legal* right to the property secured by it passes by its delivery, because, although an instrument may be saleable in the market, and treated in many respects like cash, yet if by a transfer of it nothing pass but a right to sue on it in the name of the transferrer or original party to it, such an instrument is not, properly speaking, negotiable."   The same author adds, subsequently: "It may therefore be laid down as a safe rule, that where an instrument is, by the custom of trade, transferable, like cash, by delivery, and is also capable of being sued upon by the person holding it *pro tempore*, there it is entitled to the name of a *negotiable instrument*, and the property in it passes to a *bona fide* transferree for value, though the transfer may not have taken place in market overt."   These principles control and reconcile *Gorgier* v. *Mieville* and *Glynn* v. *Baker*, for in the former case, the bond being payable *to the bearer*, the holder *pro*

*tempore* could sue on it in his own name, and was entitled to recover; in the latter case, the bond being payable to order, the holder *pro tempore* could *not* sue on it in his own name, but was compelled to sue in the name of the *payee* and thus let in defences; and therefore, by the common law, its possession gave no title as against the *real owner*. The position assumed, that the fact stated in *Gorgier* v. *Mieville* that there was proof that such bonds as those involved in that suit were negotiable in fact, controlled the decision in that case, is a clear admission of the point now involved, that a *bond payable to bearer* may become negotiable; and also that the lawful bearer may sue on it in his own name, and that, Lord Ellenborough's supposed dictum in *Glynn* v. *Baker*, to the contrary, it is not an impossible thing for a man to make his bond *negotiable*.

Without stopping to discuss the question how far it may be necessary in the case of a bond executed in a *foreign* State, payable to bearer, to prove on the trial, in the courts of this country, the fact of *its* accustomed transfer in the market, before the transferree could recover on it, and in fact without attempting now to draw a distinction between such a bond and the present one, it is clear that no allegation of its accustomed negotiability in the *pleadings* is necessary; for none such existed in the case of *Gorgier* v. *Mieville*, which was an action of trover, by the former holder. In that case the court say, "This instrument in its form, is an acknowledgment by the King of Prussia, that the sum mentioned in the bond is due to every person who shall for the time being be the holder of it; and the principal and interest is payable in a certain mode and at certain periods mentioned in the bond. It is, therefore, in its nature *precisely analogous to a bank-note payable to bearer, or to a bill of exchange indorsed in blank. Being an instrument therefore of the same description*, it must be subject to the same rule of law, that *whoever is the holder of it has power to give title to any person honestly acquiring it.*" The court then adds: "It is distinguishable from the case of *Glynn* v. *Baker*, because there it did not appear that India bonds were negotiable, and no other person could have sued them but the obligee. Here, on the contrary, the bond is payable to the bearer, and it was

Craig *v.* The City of Vicksburg.

proved at the trial that bonds of this description were negotiated like exchequer bills." Whatever evidence of negotiability is needed to sustain the action in the present case will be provable under the allegation in the declaration that *the plaintiff is the holder or bearer of the bond sued on.*   It will be observed that no question is made by the pleadings in relation to the *bona fides* of the right of plaintiff.   The simple question is, whether the allegation of defendant that before action brought it paid the amount of the bond to the Commercial Bank of Millington, is sufficient to defeat the right of plaintiff?   If issue of fact were taken on this plea, the only question to be determined would be, did such a payment take place? If it did, the verdict and judgment would have to be for defendant; even though the plaintiff may have bought the bond in the *market overt for its full value.*   This shows that no other recourse was left the plaintiff but to demur to the defendant's plea; inasmuch as no other replication of fact, without a departure in pleading, could be made, except to deny the fact of payment.

The case of *Wookey* v. *Pole,* 4 Barn & Alderson, 2; 6 Eng. Com. Law R., in principle, we think, affirms the views for which we contend; and will be found, in holding that exchequer bills not payable to order, pass by delivery, to be an authority for us; but we have not space to review the case.

We have then *Sayre* v. *Lucas,* on the one side, and the host of decisions in relation to promissory notes payable to *bearer ;* and the case of *Gorgier* v. *Mievelle,* on a bond, together with the whole reason of the thing itself, on the other.   For it cannot be pretended that there is any real distinction between a bond and note payable to bearer.   There was at common law an artificial distinction between bonds and notes; but the very foundation of that ceases even at common law, in the case of bonds payable to *bearer only ;* an instrument that *must* confer a legal title on the *bearer,* if on any body.

4. It should not be lost sight of in the consideration of this case, that the defendant is a corporation, and could only make itself liable *under seal.*   And that this enlarged and unlimited negotiability which she has given to her obligation is one of her own creation, done for a purpose; if it has proved differently from what she

Craig v. The City of Vicksburg.

expected, it is her own act. It does not lie IN HER MOUTH to deny that she is liable according to her contract. If any wrong is done her it is not only her misfortune, but her fault. .

5. We do not mean to assert that the plaintiff has the right to recover in any event on this bond; but only *prima facie*, as bearer, he has the right. His possession is *prima facie* evidence of his *bona fide* ownership for value; and he is not called upon to prove how he came by the paper unless something is shown in the defence calling in question his right, and which requires him to sustain his title by showing that he acquired it in good faith. The earlier decisions, as in the case of *Lawson* v. *Weston*, 4 Esp. 56, and *Gill* v. *Cubitt*, 3 B. & C. 466, which required prudence and care to govern one who bought negotiable paper in the market, have been overruled, and nothing now will preclude a purchaser of such paper from recovering from the maker but the fact of his having bought it in positive bad faith. See *Backhouse* v. *Harrison*, 5 Barn. & Adolph. 1098; 27 Eng. Com. Law R. That was the case of an action by the indorsee against the indorser of a bill of exchange who had lost the bill by accident; and the court held that it was a good defence that the plaintiff took the bill fraudulently or under such circumstances that he must have known that the person from whom he took it, had no title, or that the plaintiff was guilty of gross negligence in taking it. But it is no defence that he took it under circumstances in which a prudent and cautious man would not have taken it. See also *Goodman* v. *Harvey*, 4 A. & E. 870; 31 Eng. Com. Law R., where the court go yet farther and hold, that even gross negligence would not preclude the recovery if there was no positive bad faith. The court says, "I believe we all are of opinion that gross negligence only would not be a sufficient answer, where the party has given consideration for the bill. We have shaken off the last remnant of the contrary doctrine. Where the bill has passed to the plaintiff without any proof of bad faith in him, THERE IS NO OBJECTION TO HIS TITLE."

But the case of *Uther* v. *Rich*, 10 A. & E. 784; 37 Eng. Com. Law R., is still more express, and holds that before the title of the holder of negotiable paper can be questioned, his *mala fides* in acquiring it must be put in issue by the plea of the defendant

implicating the plaintiff in the alleged fraud, and *averring that he had notice of it.*    10 A. & E. 784; 37 Eng. Com. Law R.    The italics are those of the court.    It will not do to, allege merely that the plaintiff was not the *bona fide holder*, for that puts in issue merely whether he gave a consideration for it; but " he must aver the fraud or other circumstances which constitute the defence, and also aver that plaintiff had notice of it, and must then leave the circumstances by which that notice is to be proved, directly or indirectly, to be established in evidence."

See *Miller* v. *Race*, 1 Smith's Lead. Cases, already cited, (marg. page, 263 b.) Am. ed. 523.    This is the only limit on the right of the plaintiff to recover.

6.  Here we might leave this case, under the conviction that we have established : First.  The plaintiff's right to sue : Second. That his right to recover can only be put in issue by the plea of the defendant, setting up his defence and averring that the plaintiff had notice of it; which the court will observe was the form of the pleas first filed, on which the case stood at issue, for several years.  But it is contended that the rights of the parties here are governed by the law of Pennsylvania, which it is insisted lets in defences in a case like the present, and various authorities are cited; and we come lastly to consider that question.

It is fortunately immaterial to us whether the *lex loci contractus*, which is in this case also that of the *forum*, or the *lex loci solutionis* prevail here as to the rights of the parties; for we think they are identical.    The Pennsylvania Act will be found in Dunlop's compilation of the laws of that State (ed. of 1853, p. 70,) and is in these words :

1715.  " An Act for the assigning of bonds, specialties, and promissory notes.

" Whereas, it hath been held, that bonds and specialties, under hand and seal, and notes in writing, signed by the party who makes the same, whereby such party is obliged, or promises to pay unto any other person, or his order or assigns, any sum of money therein mentioned, are not by law assignable or indorsable over to any person, so as that the person to whom the said bonds, specialties, note or notes is, or are assigned or indorsed, may, in their own

names, by action at law or otherwise, recover the same. Therefore, to the intent to encourage trade, commerce and credit, that all bonds, specialties and notes, in writing, made or to be made, and signed by any person or persons, whereby such person or persons, is, or are obliged, or doth, or shall promise to pay to any other person or persons, his, her or their order or assigns, any sum or sums of money, mentioned in such bonds, specialties, note or notes, may, by the person or persons to whom the same is or are made payable, be assigned, indorsed, and made over to such person or persons as shall think fit to accept thereof."

This is the first section of the act. It contains nine sections, none referring to any other class of notes or bonds than those payable to order; and the eighth section provides, that "all assignments made of bonds and specialties, shall be under hand and seal, before two or more credible witnesses." The decisions in Pennsylvania cited by the counsel on the other side, and others not cited, made under this act, that such bonds are as liable to defalcation in the hands of the assignee as of the assignor, and which are collected in the note to the edition of Dunlop's Laws, referred to, (third ed. by T. & J. W. Johnson,) have no more reference to the case of a bond payable to *bearer*, than the statute itself, which excludes by its terms such a bond, more pointedly even than our own.

But the decisions in Pennsylvania are express and overwhelming, that the *bona fide* holder, for value and without notice, of a negotiable note made to bearer, is entitled to recover on it against the maker, free from all subsisting equities between the original parties. See 5 Watts, 482; 3 Ib. 20; 2 Ib. 134; 1 Binn. 433; and especially *Bullock* v. *Wilcox*, 7 Watts, 328, where the other decisions are reviewed and affirmed. And as we have already seen there is no distinction between a BOND and NOTE payable to bearer in this State; and it is clear, from the Statute of 1715, cited from Dunlop, that there is none in Pennsylvania. This, it seems to us, disposes of the position that there is anything in the law of Pennsylvania relating to this subject different from that of Mississippi.

7. Should the court doubt as to whether there is a sufficient aver-

ment of the plaintiff being the *bona fide* holder of this paper, besides, the authorities already cited, showing that this right can only be questioned by plea, denying it, and showing wherein it is defective, we refer the court to 2 Phil. Ev. (Cow & Hill's Notes,) 295, n. 298, and the following authorities there cited, to the effect that if a person be in possession of property, the presumption is, that he is the rightful owner: *Livingston* v. *The Penn. Iron Company,* 9 Wend. 520, 521; *Bell* v. *The Commonwealth,* 1 J. J. M. 550; *Fowke* v. *Darnell,* 5 Litt. 319, 320; *Schermerhorn* v. *Vanvolkenburg,* 11 Johns. Rep. 529; *Jackson* v. *Winslow,* 9 Cow. 13; *Jackson* v. *Rightmyre,* 16 Johns. Rep. 314; *Smith* v. *Lorrillard,* 10 Ib. 338; *Picard* v. *Williams,* 7 Wheat. 59; *Jackson* v. *Miller,* 6 Cow. 751; *Campbell* v. *Roberts,* 3 Marsh. 623; *Riley* v. *Million,* 4 J. J. Marsh. 395.

The court will see that this case has now been pending for upwards of nine years, and has never got to an issue to the country yet. It has once before, on the pleadings, been to the High Court, and is now here again, still on the pleadings; their form as far as ever from being settled. It is hoped that this court will now settle finally, the principles on which the case is to be tried and determined.

*A. Burwell* and *T. J.* and *F. A. R. Wharton,* for appellee.

1. "*Bills of exchange* and *negotiable* promissory notes are distinguishable from all other parol contracts, by the circumstance that they are *prima facie* evidence of valuable consideration, both between the original parties, and against third persons. *Mandeville* v. *Welch,* 5 Wheaton, 277.

"The general principle of law is, that *choses in action* are not at law assignable." Per Story, J., in *Teirnan et al.* v. *Jackson,* 5 Peters, 597. "If assigned, and the debtor promise to pay the debt to the assignee, the latter may maintain an action for the amount against the debtor, as money received to his use. Independently of such promise, there is no pretence that an action can be sustained." Ib.

In *Irvine* v. *Lowry,* 14 Peters, 299, this emphatic language is used: "Not being a promissory note either by the law merchant,

the statute of Anne, or the kindred act of Assembly of Pennsylvania, it is not negotiable by indorsement; and not being *under seal*, it is not assignable by the Act of Assembly on that subject relating to bonds."

The court here point out the sources, so to speak, of the negotiability of instruments, which are the law merchant, by comity, adopted and recognized as part of the law of England, the statute of Anne, and similar statutes passed by the several States.

The common law, jealous of the power and corrupt influence of the noble and rich, slowly and reluctantly admitted among its principles the liberal doctrines of the law merchant, which prevailed almost universally over the continent of Europe, for centuries before the commercial necessities of England induced the passage of an act of Parliament to facilitate the transfer of notes as the most usual, and we may say indispensable, instruments of trade. Credit is well said to be the life of trade; and credit imports the drawing of bills and notes, and their free circulation, importing valuable consideration between the parties, and against third persons.

The word "negotiable" has, in law, a distinct meaning, and must not be confounded with assignment or transfer, as in some cases will be perceived to have occurred. The negotiability of an instrument imports that it may be transferred or assigned by indorsement or delivery; but something more than this: that by such transfer, however made, the holder may recover the contents, notwithstanding any want of consideration, or failure of consideration, or other defence, which might have existed between the original parties.

Bills of exchange and promissory notes bear an analogy to each other. It is said every indorsement of a note is the drawing of a bill; it is a written direction to pay the sum specified to the holder, if in blank, and to the person named, if a full indorsement is made. All the principles of the law merchant, in regard to bills of exchange, are, by the statute of Anne, made applicable to notes. Notes are put on the same footing. Bills of exchange may be payable to order, or bearer, and are negotiable by indorsement or delivery; so of promissory notes. Byles, 1, 4, margin. "A promis-

sory note, or note of hand, is a *promise*, in writing, to pay a specified sum at a time therein limited, or on demand, or at sight, to a person therein named, or to his order, or to the *bearer*."

This author clearly lays down the doctrine stated by Judge Story, in *Tiernan* v. *Jackson*. It is somewhat remarkable that Byles is the only writer on bills and notes, who has deemed it necessary to notice the distinction, well settled in the common law, between contracts under seal or by deed, and contracts not under seal, or simple contracts. The only other reference I have been able to find, in which the very obvious distinction is alluded to, is in Story on Bills, § 61, p. 76. "But it seems that a bill of exchange, under seal, would not, by our law, be negotiable;" for which the author cites *Clarke* v. *Benton County*, 15 Wend. 250, to which special attention will be called. hereafter.

Chitty, Bailey, Story on Promissory Notes—all works of standard authority, and professing to give all the learning on the subject of negotiable paper, treating at large of the law merchant, and on every page speaking of bills and notes payable to order and *bearer*, as things of the same nature, and regulated by the same rules, and endowed either by the *lex mercatoria*, the statute of Anne, and the kindred statutes passed by the several States of the Union, with the same attributes or privileges—none of these learned authors deemed that *instruments under seal* were properly within the range of their inquiry. If an instrument under seal was invested by the law merchant, or by any statute, with the commercial quality of negotiability, it is unreasonable to suppose that the fact would have escaped four learned writers, who made this subject their especial study.

After defining what a note of hand is, Byles proceeds : " At common law, no note of hand was transferable ; and before the statute of 3 & 4 Anne, c. 9, it was the opinion of Lord Holt, and the majority of the judges, that no action could be maintained, even by the payee, on a promissory note as an instrument, but that it was only evidence of a debt. That statute, however, makes promissory notes assignable and indorsable like bills of exchange." See also Bayley on Bills, 1, and note 1, and authorities there cited.

Bank-notes, which are defined to be promissory notes made by a

banker, payable to bearer on demand, and intended to circulate as money; Goldsmith's notes, the assignable quality of which was denied by Lord Holt; checks on bankers, which have superseded Goldsmith's notes; bankers' cash notes, or *shop-notes*, have, by adoption from the law merchant, or by force of the statute, and for the encouragement of trade and commerce, been put with promissory notes, payable to order or bearer, on the footing of bills of exchange.    See *Cruger* v. *Armstrong*, 3 Johns. Cases, 5.

Byles on Bills, 8: in *Grant* v. *Vaughan*, the check was declared on as a bill of exchange, as it in fact was, though called a cash note.    The instrument was in fact of this class.

*Norton* v. *Rose*, 2 Washington, Va. 233-249: *indorsement* is one mode of *transfer*—*delivery* is another; and in all the books and decisions it will be found, that these modes of transfer and assignment are regarded as conferring the same rights and privileges to the holder, in respect to *negotiable paper;* and the principle will be found stated in every case broadly and plainly that these rights and privileges are extended for the benefit of commerce, and to the note, bill, check, &c., because they are the usual and accustomable instruments of trade, and *current* in trade.

Story on Promissory Notes, § 116: "A note may be *transferred* by mere delivery; as for example, when it is payable to bearer, or it is indorsed in blank, and the holder is not the indorser; or it may be transferred by indorsement," Ib. § 118.    The holder transferring either the note to bearer, or indorsed in blank, incurs the same responsibilities; and a note payable to bearer may be transferred by indorsement of the payee, or any subsequent holder. The rights of the holder against the maker will be found to be in every case the same, by whichever mode of transfer he may have acquired his title.    The rights and liabilities of the person transferring by delivery, of course differ from those of the indorser. See § 3 of same work: "Every indorser is of course deemed the holder, and so is every person, who, by a transfer of a note payable to bearer, becomes entitled thereto."

Kent, in his Commentaries, vol. 3, p. 72, § 44, (1,) and note *a*, declares that promissory notes payable to bearer were made negotiable by Statute of Anne; and in the text and notes uses the

words "order" and "bearer," as all other writers do, as evidence of the right, and pointing out the mode of transfer.

Bayley on Bills, 101, § 5, c. 5, classes bills and notes payable to order and bearer together. "Bills and notes are assigned either by delivery only, or by indorsement and delivery." See page 101-104.

If a note or bill payable to order be deposited with a banker for a particular purpose and be indorsed, and he negotiate or pledge it, as between the person who made the deposit and an insolvent holder, the fraud of the banker is binding. Just so of a note or bill payable to bearer. Bayley, 113, 323, 327.

Ib. 333. "Any person in possession of a bill or note indorsed in blank, or payable to bearer, is *prima facie* the lawful holder, and entitled to sue on it." Thus an administrator in another State may sue on a note payable to bearer in this; just so of a note payable to order and indorsed. Ib. 334; 5 Wend. 257; 9 Ib. 426. The rights are the same in both cases. In regard to the note payable to bearer, the court says: "It was not pretended in this case that the defendants had any set-off, or other defence, as against the payee;" which language would not be used if it were not true that the title of the bearer is a derivative one, and he was not in fact merely the holder, and on the same footing as the holder by indorsement.

The form of action is the same, and the note as evidence has the same validity, whether the holding be by indorsement or as bearer. The holder may in either case sue on the note, or give it in evidence on the count for money had and received. Bayley, 388, 390, and the authorities cited in notes.

Where a note or bill is given in payment, or where it is lost, or executed by a clerk, or one usually employed for that purpose, all the rules of pleading and evidence applicable to one payable to bearer, apply in the same manner, and to the same extent as to one payable to order. Bayley, 402, 412, 493, 500, 549, 597, 508.

And here I remark, that these rules, applied in every case to notes to bearer and order alike, treating them equally as usual instruments of trade, are not applicable to "*sealed*" contracts.

I beg to refer to the following authorities, an examination of

which will, I think, establish beyond doubt the propositions I have laid down; and show that there is no such magic in the word bearer, as is supposed. I cannot state the cases, or make extracts from them, without enlarging this brief into a volume. *Whitaker* v. *Brown*, 8 Wend. 490; *Olmsted* v. *Stewart*, 13 Johns. 239; *Kerby* v. *Sisson*, 2 Wend. 550; *Pierce* v. *Crafts*, 12 Johns. 90; *Frear* v. *Evertson*, 20 Ib. 142; *Murray* v. *Judah*, 6 Cowen, 490; *Brush* v. *Reeves*, 3 Johns. 439; *Williams* v. *Matthews*, 3 Cowen, 252; *Robinson* v. *Crenshaw*, 3 Stewart & Porter, 288; *Smith* v. *Pettus*, Ib. 107.

Our court, in *Glass* v. *Moss*, 1 Howard, 520, held "possession of a promissory note is *prima facie* evidence of ownership; and I take the rule to be equally applicable whether it has been transferred by indorsement or delivery." It is necessary to show title to a note, in order to maintain suit on it, as to any other species of property. 2 Howard, 647; 4 Ib. 399. But having title to a note, and right to sue on it, and to recover the contents, are one thing; and having that title and right, as commercial holder; as indorser or bearer in the commercial application of those terms to negotiable paper, is a wholly different thing and rests upon other principles. Thus our High Court, having laid down the rule as to the evidence of title by possession, in terms as broad as can be employed, when the question is about the *negotiability*, or the terms and conditions on which the possessor has his title, (in *Kershaw* v. *M. Bank of N. York*, 7 Howard, 391,) use language not to be mistaken, as I conceive:—

"There is, moreover, clear evidence that the intention of this statute was to make a *radical* change in commercial usage in relation to all negotiable paper."

The words of the statute are very comprehensive: "All bonds, obligations, bills single, promissory notes, and all other writings for the payment of money, or any other thing, *shall* and may be assigned by indorsement, whether the same be made payable to the order or assigns of the obligee or payee, or not, and the assignee or indorsee shall and may sue," &c. A note payable to A. or bearer, is payable in England, under the Statute of Anne, to bearer, and as to a *bona fide* holder, A. is considered a fiction, just

as a note payable to a fictitious person or order, is regarded in the law merchant, and under this statute by the courts of England.— But a note payable to A. or bearer, under the above language in our statute, is as clearly embraced in the words "not payable to the order of the payee," as a note payable to A. is.  Now as to some of the *choses in action* enumerated in our statute, it is clear that the statute, and *that only*, authorizes the assignment, and enables the person entitled, to maintain an action.  Is it not a just construction to say that the language was intended to apply to all? The words "promissory notes" embrace notes to bearer, to order, or to payee, as I have fully shown.  The language employed is not permissive; it is imperative and permissive.

The intention was not to enlarge the *negotiability* of paper in a commercial sense, but the contrary.  The evident intent was to place all contracts in writing for the payment of money on the same footing.

I ask particular attention to the able opinion of Judge Saffold, in *Robinson* v. *Crenshaw*, 2 S. & P. 288.

The question of negotiability is one of custom, of commercial usage, and the authorities are full to this point.  The custom in this State has not prevailed so universally to regard a bond payable to bearer as a species of currency, as to require this court to pronounce them by law, negotiable.  On the contrary, bonds are not accustomably current, as cash, or in approximation to it.  The doctrine now announced, has, in Mississippi, the merit of novelty. I confidently challenge the proof, that by any usage or custom known or recognized in the *lex mercatoria*, sealed instruments were negotiable.  Seals were not used in the civil law to authenticate private contracts; and I am sure that no custom of that kind prevails now, nor ever prevailed in Mississippi, even if that would establish negotiability against rules of law.  *Grant* v. *Vaughan.*

Lord Mansfield decided a check (or note as he calls it,) to be *negotiable* by law, and the *bona fide* bearer entitled to recover. "Bearer, (says Mr. Justice Wilmot,) is a *descriptio personæ*, and a person may take by that description, as well as by any other."  All these statements are to be taken with reference to the character

of commercial negotiability attached to the paper by the statute and commercial usage of England. To show this, I quote Lord Mansfield in *Peacock* v. *Rhodes*, Douglass, 636." " *The holder of a bill of exchange or a promissory note, is not to be considered in the light of an assignee of the payee.*" "I see no difference between a note indorsed in blank and one payable to bearer." In *Miller* v. *Race*, 1 Burr. 452, Lord Mansfield fully explains his meaning. After reviewing authorities, he concludes: "These authorities show that not only money itself may pass, and the right to it may arise by currency alone, but further, that these mercantile instruments, which entitle the bearer of them to money, may also pass, and the right to them may arise in the like manner by currency or delivery." See also *Wookey* v. *Pole*, 6 E. C. L. R. 326. Every remark made by Lord Mansfield is as applicable to a note or bill, or other negotiable instrument, payable to order and indorsed, as to those payable to bearer. No distinction is made between them. The indorsee is the person described, and comes as well within Mr. Justice Wilmot's expression of *descriptio personæ*, as the bearer.

The main point is, that a sealed instrument is not negotiable, by virtue of any statute, or by the law merchant, and however this court may rule in regard to promissory notes, the action of debt on a sealed instrument, does not come within any of Lord Mansfield's principles of "eternal justice." An action of debt lies on a sealed instrument; and the bond is not merely evidence on a count for money had and received.

First, I call attention to the express authorities: *Clark* v. *Benton Co.*, 15 Wend. 257.

"Promissory notes, which were made negotiable the same as inland bills of exchange by the statute of Anne, were *not* under seal. Chitty on Bills, 324. If they had been, since that statute, all specialties could have been negotiable, and the advantage in their favor in respect to the Statute of Limitations, would have introduced them into general use." This case was decided in 1836, and refers to the case of *Gorgier* v. *Mieville*, so much relied on. *Sayre* v. *Lucas*, 2 Stewart, (Ala.) 259, decided in 1830; and reviews the cases of *Bullard* v. *Bell*, and *Gorgier* v. *Mieville*.

"Writings obligatory, or notes under seal, are not negotiable at the common law, so as to authorize the action by the assignee in his own name: if the action can be maintained, it must be by virtue of the statute." As to *Gorgier* v. *Mieville,* the court say: "This decision was solely on the ground that the bond was payable directly to the holder, and also because it was proved at the time that such bonds were negotiated like exchequer bills." I will presently comment on the case in 10 E. C. L. R. 16. I refer to the opinion of Judge Crenshaw, from page 260 to 262. To the same effect are the following cases: *Lewis* v. *Wilson,* 5 Blackford, 370; *Byrne* v. *Walker,* 7 S. & R. 483; 9 Johns. R. 64; *Howell & Smith* v. *Hallett,* 1 Minor, (Ala.) 2; *Glynn* v. *Baker,* 13 East, 509, in which Lord Ellenborough says, Ib. 516: "Any individual might as well say that he would make his bond negotiable," *evidently regarding this as a legal impossibility.*

I refer again to 6 Eng. Com. Law R. 323, for the form of an exchequer bill, and an able exposition of the principles of the commercial law, as understood in England; and the character of the instruments on which it operates. None of these embrace sealed instruments. *Miller* v. *Race,* 1 Smith's Leading Cases, 447, contains an able review of many of the cases. After stating the two requisites necessary to a negotiable instrument, the author concludes:—

"But if either of the above requisites be wanting, *i. e.,* if it be either not accustomably transferable, like cash, or capable of being sued by the person holding it *pro tempore,* it is not a negotiable instrument, &c. Further—although an instrument may contain nothing on the face of it inconsistent with the character of negotiability, still, if 'it be not accustomably transferable in the same manner as cash, it will not be looked upon as a negotiable instrument.'" See also the author's quotation from *Long* v. *Smyth,* as to the true principle involved in *Gorgier* v. *Mieville.* On this case I make these comments:

1. The action was not *on* a *bond* against the maker, but was *trover* to recover the Prussian bond which had been deposited with a banker, and improperly pledged to the defendants.

2. The form of the instrument is not given, and there is nothing

to show that it was under seal. The nearest I can come to the form of a Prussian bond, is to produce a "Kossuth" or "Hungarian bond," and they are like the exchequer bills, and not like the East India bonds. The papers issued by Kossuth are called "Bonds," and it is evident that the Prussian bonds in *Gorgier* v. *Mieville*, were not sealed instruments.

3. The proof was, that these instruments called "Prussian Bonds" were sold in the market and passed from hand to hand daily, like exchequer bills, at a variable price according to the state of the market.

4. The Prussian bond "is in its nature precisely analogous to a bank-note, payable to bearer, or to a bill of exchange indorsed in blank."

5. The Prussian bond was a *government security* or *stock*, issued by the sovereign, for the express purpose of raising money, on which no suit could ever be brought in the English courts, except by inveigling the King of Prussia into the jurisdiction, and serving a writ on him; a very remote and inhospitable supposition. I submit that none of these propositions can be made in reference to the *bond* of a private individual or corporation of Mississippi, and of course the case of *Gorgier* v. *Mieville*, solely relied on, unsustained by any case or *dictum* in an English book, if it is to be taken as ruling that a sealed instrument ever was negotiable, and directly overruled, as I have shown it to be in this view of it at least, must not control the opinion of this court.

It is unreasonable to suppose that the counsel who argued *Gorgier* v. *Mieville*, and the judge, could have overlooked the circumstance of the seal, if the instrument had been of that character. In common parlance it was called a "Prussian bond," (just as the certificates issued by Kossuth are called "Hungarian bonds,") and the court so call it, following the common mode of expression, and not using it in a technical manner as applicable to sealed instruments.

I am at a loss to perceive how the opinion of Judge Story in *Bullard* v. *Bell*, applies to the present question. The question before Judge Story was one of jurisdiction, under the Judiciary Act of 1789, which prohibits suits by assignees, in certain cases. Judge

Story decides, and I will admit correctly, that the bearer of a promissory note is not an assignee within the act. Does this advance us one step in the investigation of the question of the negotiability of a note? Still less does it sustain the proposition that a man may make his bond negotiable. The Supreme Court in *Bonaffe* v. *Williams*, do not cite or approve *Bullard* v. *Bell*, nor indorse any of the reasoning by which Story arrived at his conclusion.

A man may have a title and right to sue, and that title and right may pass to another, and yet not as currency, as cash, or with any of the privileges of currency or cash.

I see no propriety in extending the reasoning of an opinion, beyond the point before the court, and if this is allowed, any thing and every thing can be proved, by reported cases, to be law.

*George L. Potter*, on same side,
Filed an elaborately written argument, in which he made the following points:—

1. Bonds were not assignable at common law. *Clark* v. *Farmers' Man. Co.*, 15 Wend. 256; Chitty on Bills, 6; 13 S. & M. 520; 14 Ohio, 344; *Sayre* v. *Lucas*, 2 Stew. & Port. 259.

2. By the law of Pennsylvania, where this bond was payable, bonds are only assignable by virtue of the Act of Assembly, in a prescribed form, under seal, and in the presence of witnesses. Unless the assignment be in writing, and according to the form prescribed by the Act of Assembly, the legal title did not pass, and the assignee could not maintain an action on it in his own name. See *Folwell* v. *Beaver*, 13 Serg. & Rawle, 314.

3. The assignee of a bond, in Pennsylvania, even when the assignment was made in accordance with the terms of the statute, takes it subject to all the equities existing at the time in favor of the obligee. *Baring* v. *Shippen*, 2 Binn. R. 165; 3 Watts & Serg. 411; *Gordon* v. *Insurance Co.*, 4 Binn. 33; *Berry* v. *Hartman*, 4 S. & R. 177; 2 Yeates, 23; Ib. 233; Ib. 465; 1 Dallas, 27; *Frantz* v. *Brown*, 1 Pennsylvania R. 261; *Mann* v. *Dungan*, 11 S. & R. 77.

4. The fact that this bond is made payable to "bearer," makes no difference, for by the common law such instruments were not

negotiable. They were first made so by the statute of Ann. See 12 Johns. R. 90; *Grant* v. *Vaughan*, 3 Burr. 1516; *De La Chaumette* v. *Bank of England*, 22 Eng. Com. Law R. 107; *Rankin* v. *Woodworth*, 2 Watts, 134; *Hodges* v. *Stewart*, 1 Salk. 125; *Nicholson* v. *Sedgewick*, 1 Lord Raymond, 180; *Hinton's case*, 2 Show. 247; Chitty on Bills, 219; *Clerke* v. *Martin*, 2 Lord Raymond, 758; Ib. 774-825; 2 East. 359; *Clark* v. *Kinny*, 2 Mass. 524; *M'Nitt* v. *Hatch*, 4 Blackford's R. 531; *Lewis* v. *Wilson*, 5 Ib. 370. If the word "bearer" had the effect to make the bond negotiable, a contract payable to "bearer" in goods would also be negotiable; but it is settled that it is not. See *Fahnestock* v. *Shoyer*, 9 Watts, 103; *Rhoder* v. *Livisly*, 3 Ohio, 51.

HANDY, J., delivered the opinion of the court.

This was an action of debt brought by the plaintiff in error, against the defendant in error, upon a bond executed by the corporate authorities, and under the corporate seal of the city of Vicksburgh, promising "to pay to the bearer thereof, the sum of one thousand dollars, with interest thereon, at the rate of six per cent. per annum, payable at the end of each six months from the date thereof, both principal and interest to be paid at the United States Bank, in Philadelphia, in gold or silver coin, upon presentation of the scrip," dated the 13th June, 1840. The declaration avers that the plaintiff is the lawful bearer of the instrument, and makes *profert* of it.

The pleas on which the judgment of the court below was pronounced, and which are now the subjects for consideration are:

1. That before the commencement of the action, the defendants paid the debt and all interest to the Commercial Bank of Millington, to which said bond was delivered and made, before the defendant received notice of any assignment or transfer to the plaintiff. And with this plea, a notice was filed that the defendants would produce as a set-off, the notes and checks of the Commercial Bank of Millington, held by them, and then produced and filed.

2. That the bond sued on was fraudulently, and without consideration, obtained from the defendant by the Commercial Bank

of Millington, and that the defendant has never received any consideration therefor.

The plaintiff filed a general demurer to these pleas, which was overruled, and the plaintiff declining to reply, a judgment was rendered upon them for the defendant.

These pleas present two questions for consideration:

1st. Whether, on a bond payable to bearer, and of which the plaintiff has become the *bona fide* holder by delivery, the plaintiff acquires the legal title enabling him to maintain an action upon it?

2d. Whether, in such an action, a defence which may have existed against a prior holder, to whom the bond was originally delivered, is admissible in bar of the action?

1. It is conceded by the counsel for the defendant in error, that if the bond in this case can be regarded as a negotiable security, the holder, taking it *bona fide*, acquired the legal title to it. But it is insisted that, as bonds were not assignable by the common law, and as by the laws of Pennsylvania, where this bond was payable, and by our laws, bonds can be transferred so as to vest a legal title in the assignee, only by assignment of the obligee in writing, no such title passed by the mere delivery of this bond to the plaintiff. This is undoubtedly true, if the bond in this case be within the common law rule, or if it be such a bond as is embraced in the provisions of the statute of this State and of Pennsylvania. We have, therefore, first to determine whether this bond is within the provisions of those statutes.

Our statute provides, that "all bonds, obligations, bills single, promissory notes, and all other writings for the payment of money or any other thing, shall and may be assigned by indorsement, whether the same be made payable to the order, or assigns of the obligee or payee, or not; and the assignee or indorsee shall and may, sue in his own name, and maintain any action which the obligee or payee might or could have sued or maintained thereon, previous to assignment; and in all actions commenced and sued upon any such assigned bond, obligation, bill single, promissory note, or other writing, as aforesaid, the defendant shall be allowed the benefit of all want of lawful consideration, failure of consideration, payments, discounts, and set-offs, made, had or possessed

against the same, previous to notice of assignment," &c., "as if the same had been sued and prosecuted by the obligee or payee therein; and the person or persons to whom such instruments so payable are assigned, may maintain an action against the person or persons who shall have indorsed or assigned the same, as in cases of inland bills of exchange." Hutch. Code, 640, § 9.

The object of this statute clearly was, to make assignable such instruments as were previously not assignable, and, by the assignment, to vest a legal title in the holder, which would not have passed without the assignment. Instruments which passed to the bearer upon their face, and without the necessity of an assignment, were not within its contemplation. The intention was to enable a party to sue, who must derive title as *assignee;* and no reference was had to a party claiming title by the nature and terms of the contract, without any assignment. This view of the statute has been taken by this court, in *Tillman* v. *Ailles,* 5 S. & M. 373, where it was held, that "a note payable to bearer, passes by mere delivery, and the holder claims his title to the note by virtue of being its bearer, and of the promise and contract between the maker and bearer. The circumstance of making the note payable to any person or bearer, does not compel the holder to show an indorsement by that person, since it is payable in the alternative, and not to that person absolutely. In such case, it is transferable by mere delivery." The same construction has been put upon the statute of Alabama, which is the same as our own. 2 Stew. & Port. 312 *et seq.*

It is evident, therefore, that the bond in question is not within the scope of our statute, and that the title of the plaintiff does not depend upon an assignment or indorsement, under its provisions.

The statute of Pennsylvania appears to have the same scope, and to be framed with the same object as our own. It provides that all bonds, specialties, and notes in writing, signed by any person or persons, whereby such person or persons is or are obliged, or doth, or shall promise to pay to any other person or persons, his, her, or their orders or assigns, any sum or sums of money, mentioned in such bond, specialties, note or notes, may, by the person or persons to whom the same is, or are made payable, be

assigned, indorsed, and made over to such person or persons as shall think fit to accept thereof. Laws of Pennsylvania, by Dunlop, edit. of 1853, p. 70.

The eighth section of the act provides, that all assignments of bonds and specialties shall be under hand and seal, before two or more credible witnesses. And no other instruments are embraced in any of the sections of the act than such as are payable to the order or the assigns of the payee or obligee.

This statute, like our own, manifestly applies to instruments, the legal title to which was necessary to be passed by assignment, and not to instruments payable to bearer.

We therefore think it clear, that neither the statute of this State nor that of Pennsylvania, has any application to an instrument like the present, payable to bearer.

We have, then, to consider what is the nature and legal effect of a bond payable to bearer, by the rules of the common law.

The leading case upon this subject is *Grant* v. *Vaughan*, 3 Burr. 1516, which was an action by the bearer, upon a promissory note, payable to the ship Fortune, or bearer; and after elaborate examination, it was held that by the very terms of the contract, any *bona fide* holder of such a note was entitled to maintain an action upon it, such paper being negotiable from its nature and legal effect, which was that any one who should become the lawful holder of it, was entitled to the benefit of it. It is true that Lord Mansfield refers to the statute of 3 & 4 Ann, ch. 9, as showing that such notes were placed upon the same footing with inland bills of exchange. But this is added after he had already shown the negotiability of such paper, apart from the statute, both by reason and authority. And the opinions of all the judges fully show that the right of a *bona fide* holder to recover upon such a note, proceeds from the nature of the contract, which right, though corroborated by the statute, necessarily arises from the intrinsic obligation to pay to whoever might be the holder. Wilmot, J., says: "This is a negotiable note, and the action may be brought in the name of the bearer. *Bearer* is a *descriptio personæ;* and a person may take by that description as well as by any other. In the nature of the contract, there is no impropriety in his doing

so. It is a contract *to pay the bearer*, or *the person to whom he shall deliver it*, whether it be a note or a bill of exchange; and it is repugnant to the contract, that the drawer should object that the bearer has no right to demand payment of him." And Yeates, J., said: "Nothing can be more peculiarly negotiable than a draft or bill, payable to bearer, which is, in its nature, payable from hand to hand, *toties quoties.*"

In *Gibson & Johnson* v. *Minet & Fector*, 1 H. Black. 605, 606, Ch. Baron Eyre, forcibly states the principles governing this subject, thus: "The title of an original payee is immediate, and apparent on the face of the bill. The derivative title is the title by assignment, a title which the common law does not acknowledge, but which exists only by the custom of merchants." After speaking of the different nature and effect of bills payable *to order* and requiring indorsement, and those payable *to bearer*, which pass without indorsement, he adds, with reference to those payable to bearer: "The value of the writing, the assignable quality of it and the particular mode of assigning it, are created and determined in the original frame and constitution of the instrument itself; and the party to whom such a bill is tendered has only to read it, need look no further, and has nothing to do with any private history that may belong to it."

In *Bullard* v. *Bell*, 1 Mason, 251, Judge Story says: "A note payable to bearer is often said to be assignable by delivery; but in correct language, there is no assignment in the case. It passes by mere delivery; and the holder never makes any title by or through any assignment, but claims merely as bearer. The note is an original promise by the maker to any person who shall become the bearer. It is, therefore, payable to any and every person who successively holds the note *bona fide*, not by virtue of any assignment of the promise, but by an original and direct promise, moving from the maker to the bearer."

In the *Bank of Kentucky* v. *Wister et al.*, it is said to be uniformly held by the Supreme Court of the United States, that a note payable to bearer, is payable to any body, and not affected by the disabilities of the nominal payee. 2 Peters, 326; *Bonnafee* v. *Williams*, 3 How. (S. C.) 574.

In *Pierce* v. *Crafts*, 12 Johns. R. 90, upon a note payable to William Douglass, or bearer, it is said, "*Bearer* is a *descriptio personæ* of the real payee, and the note was transferable by delivery merely;" and, in reply to the objection that there was no privity of contract between the maker and the bearer, the court say, "There is a legal privity of contract between the maker of a negotiable note and the assignee, or bearer, in this case. It is a contract to pay the money to whoever may become entitled to it by transfer, as bearer; and such privity commences as soon as the bearer becomes so entitled."

In accordance with these authorities is the decision of this court in the case of *Tillman* v. *Ailles*, above cited; and we consider it well established, that the holder of a note payable to bearer, derives his title to the note from the very terms of the contract, apart from the statute in relation to the assignment of such instruments, and without any necessity of an assignment from a previous holder. It is the express contract which the maker has issued to the world, that whoever should become the *bona fide* holder of the instrument should be entitled to receive the money therein agreed to be paid. When it comes to the hands of such a holder, the contract is complete; and surely the maker should be bound by his own agreement. It is not founded on a violation of any principle of public policy, or of any rule of positive law, and is not against good morals. And upon reason and authority, and upon common law principles applicable to contracts, a note made by A., payable generally to bearer, and of which B. becomes the *bona fide* holder, is as valid a legal obligation, and as capable of being enforced by suit by B., as if the note had been made directly to B. by name, for a valuable consideration. And it is upon this ground that contracts of this kind have been sustained, and not by virtue of any force derived to them from statutes in relation to the assignment of instruments not in themselves assignable.

But it is said that the authorities sustaining the title of the holder of paper payable to bearer, apply to cases of promissory notes, and not to bonds. Let us see what force there is in this objection.

It is said that promissory notes are negotiable paper, but that

bonds are not, though both be payable to bearer. But how do such promissory notes become negotiable? It is above shown that such notes are neither embraced in our statute, nor in that of Pennsylvania, in relation to the assignment of instruments for the payment of money; and, consequently, they do not acquire their negotiability from those statutes. Nor can it be derived from the statute of Ann, for that is not in force here, and, we believe, not in Pennsylvania. Yet it is settled by this court that such notes are negotiable, not by the statute, but by "the promise and contract between the maker and bearer." And they are also held to be negotiable in Pennsylvania, though not within the provisions of their statute. *Bullock* v. *Wilcox*, 7 Watts, 328.

According to the generally received opinion, promissory notes, equally with bonds, were not negotiable or assignable at the common law, so as to vest the legal title in the assignee, because they were *choses in action*. But all such instruments are put upon the same footing as to negotiability by our statute and that of Pennsylvania; and whatever would be sufficient to render one class of them negotiable would be sufficient as to another class, so far as those statutes affected their negotiability. If, therefore, promissory notes, payable to bearer, derive their negotiability from the provisions of the statutes of this State or of Pennsylvania, without being specially embraced in those statutes, or coming within their purview, with equal reason, must bonds, payable to bearer, be rendered negotiable by force of those statutes.

But both of these classes of contracts are beyond the pale of those statutes, and if valid at all as negotiable instruments, they must be so on common law principles. They both stand upon the same principle as to negotiability—and that is, the promise of the maker that he would pay the holder, whoever he might be, which is the very essence of the contract, and without which it would be void for want of parties. If they derive their negotiable character from the terms and nature of the contract, unaided by the statute, we cannot perceive upon what reason *a note*, promising to pay money to bearer, should be held to be valid in the hands of a *bona fide* holder, and *a bond*, payable to bearer, held to be invalid; for, by the rules of the common law, and in many respects under

statutory regulations, the latter are held to be instruments of higher dignity than the former. It would, indeed, be strange, to hold that a party might make a valid promissory note, and give it all the force of commercial paper by simply signing his name to it, but that an instrument of precisely the same tenor and effect, with the exception that he added his seal to his name, should destroy the negotiable character of the instrument.

Many cases have been cited by the counsel for the defendant to show that bonds of this description cannot be considered as negotiable instruments. For the most part, those cases are not direct authorities upon the point in controversy, and afford but little aid in the consideration of the true points involved in this case. It appears that there are but few cases to be found in the books, in which bonds like the present have been the subject of controversy upon the points here presented. We will advert to those which are relied on as having particular application to this case.

*Glyn* v. *Baker*, 13 East, 512, was an action brought by the true owner of certain East India bonds, which were deposited in the hands of an agent, by whom they were fraudulently delivered to the defendant, under circumstances showing that he did not receive them *bona fide*. These bonds were payable to W. G. Sibley, his executors, &c., and were indorsed by him in blank. They were not negotiable by statute, and were not payable to bearer; and it was very properly held, that no action could be brought upon them except by Sibley, the payee, or by his executors; and therefore, that the bonds were not negotiable by delivery. The circumstances of the case show no analogy to this case. But it is relied on, on account of an observation made by Lord Ellenborough, in stating his reasons for his opinion, "that any individual might as well say that he would make his bond negotiable." The remark has but little force; and it certainly cannot be entitled to be received as a solemn decision, that an individual cannot in any form make his bond negotiable.

The only case cited in behalf of the defendant directly in point, is that of *Sayre* v. *Lucas*, 2 Stewart, Alabama, 259. That case is in opposition to the reasoning of the many cases above cited, showing the nature and legal effect of such contracts; the views

Craig *v.* The City of Vicksburg.

taken of the subject are loose and unsatisfactory ; and it appears to be the opinion of but four of the seven judges. The opinion of the dissenting judges appears to be much better considered, and is sustained by the authorities and sound legal reasoning.

The last case which we will notice on this point, is that of *Gorgier* v. *Mieville,* 3 Barn. & Cress. 45; 10 Eng. C. L. R. 16. That case involved the character of a bond of the King of Prussia, acknowledging that the sum mentioned in it should be due to *every person who should be for the time being the holder of it.* This bond was held to be analogous to a bank-note, payable to bearer, or to a bill of exchange indorsed in blank. It was said to be distinguishable from the case of *Glyn* v. *Baker,* because then it did not appear that India bonds were negotiable, and no other person could have sued them but the obligee ; and the Prussian bond was payable to bearer. It is manifest that these are the reasons which the court considered sufficient to fix the character of the instrument. But after stating them, the court proceeds to add, that it also appeared on the trial, that bonds of that description were negotiated like exchange bills. This is stated as a circumstance adding force to the reason already given, that the *bond was payable to bearer,* which was sufficient to determine its legal character, and which it is plainly intimated would have been sufficient to make the India bonds in the case of *Glyn* v. *Baker,* negotiable, if those bonds had contained those terms.

This case is directly in point, and is an application of the principle stated in the numerous cases in relation to promissory notes, to a bond payable to bearer, that from the nature and constitution of the instrument, it is a direct contract between the obligor and whoever may become the holder of it.

Many cases from Pennsylvania have been cited in behalf of the defendant in error, to show that in that State bonds are assignable only by statute, and in the mode prescribed by statute. But we consider those decisions as having reference to such instruments as required an assignment, to pass the legal title, and as did not pass by delivery ; and consequently they are not applicable to this case, in the view we take of it.

It is worthy of observation, that the bond in this case is made

by a corporation. It is in that form in which securities intended to circulate freely in the market are always drawn. It is for the payment of money; is payable indefinitely to bearer, and is under the seal of the corporation; and it may not be improperly considered as a money security of a higher dignity than the note or bond of a mere individual. From its nature and form, it would come to the hands of the holder, as the representative of money, and he might well conclude that it was put into the market for that purpose. These considerations appear to us to go far to make it in all respects analogous to the case of the Prussian bond, and to give great force and applicability to the authority of that case.

We are, therefore, of opinion that, under the facts stated in the pleadings, the plaintiff acquired the legal title to the bond, and was entitled to sue upon it.

2. If the conclusion to which we have come upon the first proposition be correct, there is but little difficulty upon the second.

It is settled by the authorities above cited, that if the plaintiff became the holder of this bond *bona fide* and for a valuable consideration, he is entitled to recover upon it without regard to any defences that might have existed against the Bank of Millington, and of which he had not notice, either in fact or in law. It is also well settled, that, generally the holder is presumed to be, *prima facie*, a *bona fide* holder, and for value. Story, Prom. Notes, §§ 196, 197. And it is incumbent on the defendant to show that the plaintiff became the holder of the paper under such circumstances as to show that he had notice, either actually or in law, or that he did not acquire it for a valuable consideration.

The pleas in this case show a good defence as against the Bank of Millington; but contain nothing showing that the plaintiff did not take the bond *bona fide*, and for a valuable consideration. If they could prevail, it would be to reverse the legal rule, and instead of the necessity devolving on the defendant, to show that the plaintiff did not become the holder, for value and without notice, the plaintiff would be required in the first instance to establish his title by evidence.

Upon a careful consideration of the principles involved in the

case, and an examination of the numerous authorities in which the subject has been considered, we are satisfied that the pleas are not a sufficient defence to the action, and that the plaintiff's demurrer should have been sustained.

The judgment is accordingly reversed, and the cause remanded for further proceedings.

A re-argument was asked for, but it was refused.